## WAITE *v.* DOWLEY.

A State statute is not void, which, for the purposes of taxation, requires, under a penalty for his neglect or refusal, the cashier of each national bank within the State to transmit, on or before the fifteenth day of April in each year, to the clerks of the several towns in the State in which any stock or share holders of such bank shall reside, a true list of the names of such stock or share holders on the books of such bank, together with the amount of money actually paid in on each share on the first day of that month.

ERROR to the Supreme Court of the State of Vermont.

On the 9th of November, 1865, the legislature of Vermont passed the following act. Acts of 1865, p. 17.

" An Act providing for taxing stock in the several banking associations in this State, formed under the act of Congress approved June 3, 1864, entitled, ' An Act to provide a national currency.'

" SECT. 1. It shall be the duty of the cashiers of the several banking associations in this State, formed under the act of Congress approved June 3, 1864, entitled, ' An Act to provide a national currency,' and the cashiers of all other banks in this State, to transmit to the clerks of the several towns in this State in which any stock or share holders of such banking association shall reside, a

true list of the names of such stock or share holders on the books of such banking-association, together with the amount of money actually paid in on each share on the first day of April in each year hereafter, on or before the fifteenth day of April in each year.

" SECT. 2.   The stock and shares of all such banking associations shall be set in the list, and taxed in the same manner that the stock in the several banks in this State, which are chartered under the authority of this State, are liable to be taxed by the existing laws thereof.

· " SECT. 3.   If any of the stock of such banking associations is owned by, or stands in the name of, any person residing out of this State, it shall be the duty of the cashier of such banking association to transmit to the clerk of the town in which such banking association is situated, the names of all such non-resident stock or share holders, with the number of shares standing against the name of each of such stock or share holders on the books of such banking association, together with the amount of money actually paid in on each share on or before the fifteenth day of April in each year.

" SECT. 4.   Whenever the collector in any town in which any such banking association is situated shall have a tax against any stock or share holder in such banking association who is not a resident of this State, it shall be the duty of the cashier of such banking association, upon presentation of such tax to him by such collector, to pay the same, and charge the same to such stock or share holder on the books of such banking association, and all dividends due and becoming due upon the same shall be holden to such banking association for the payment of such tax.

" SECT. 5.   If any cashier shall neglect or refuse to make returns to any town in this State, as provided in this act, he shall forfeit and pay to the treasurer of such town, for the benefit of such town, the sum of $500, to be recovered by an action on the case, in the name of such treasurer, founded on this statute."

This action was brought in March, 1870, in the County Court of Windham County, Vermont, by Dowley, as treasurer of the town of Brattleboro', against Waite, the cashier of the First National Bank of Brattleboro', to recover the penalty prescribed by the fifth section of the foregoing act, for refusing, in 1866 and 1867, to make to that town the returns provided for in the first section.

The only defence set up at the trial was, that, as the bank was organized under the law of Congress, Waite, as such cashier,

was amenable to no law but that, and that the State had not power to prescribe or define his duties as such cashier.

Waite also offered evidence tending to show, that, at all times during the years in question, the bank kept such lists of its stockholders as the act of Congress requires, which were open to the inspection of the trustees of said town, who were permitted at all times to transcribe therefrom, and set in the grand list of the town all such stock of said bank as they deemed taxable.

Dowley waived all objection to the admission of the evidence, but claimed that, if admitted, it constituted no legal defence to the action.

The court thereupon directed a verdict for Dowley, which was taken.

To this decision Waite duly excepted; his exceptions were allowed, and the cause passed to the Supreme Court for review.

That court rendered a decision affirming the judgment of the county court, and giving judgment for Dowley against Waite for the amount of the verdict with subsequent interest.

Waite thereupon brought this writ here, assigning for error that the Supreme Court of Vermont erred, —

*First,* In holding that the statute of the State was valid under the Constitution of the United States, as not repugnant to nor in conflict with the acts of Congress providing for the organization and management of national banks, being the acts of March 25, 1863, and June 3, 1864.

*Second,* In rendering judgment against him for the penalties provided by a statute which is invalid, as repugnant to and in conflict with said acts of Congress.

*Mr. E. J. Phelps* for the plaintiff in error.

A long and uniform course of decision in this court has established the proposition, that, in all cases where the State governments have a concurrent power of legislation with the national government, if Congress exercises its power upon the subject, that of the States is excluded. They cannot enter upon the same ground nor legislate for the same object.

Nor is it the question in such cases, whether the two statutes are, in their operation, necessarily repugnant or contradictory to each other. The State cannot legislate at all upon the sub-

ject, except so far as Congress may permit. When once Congress has acted upon it, that action becomes supreme, and all interfering legislation of the States, whether in aid of or in opposition to it, is suspended and prohibited.

It is, therefore, as much beyond the power of a State to impose a penalty for a non-compliance as for a compliance with the requirements of an act of Congress. *Houston* v. *Moore,* 5 Wheat. 1; *McCulloch* v. *Maryland,* 4 id. 316; *Osborn* v. *Bank of United States,* 9 id. 738; *Brown* v. *Maryland,* 12 id. 419; *Weston* v. *Charleston,* 2 Pet. 466; *Dobbins* v. *Erie County,* 16 id. 435; *Gilmore* v. *Philadelphia,* 3 Wall. 713; *Ex parte McNeil,* 13 id. 240; *Bank of Commerce* v. *New York City,* 2 Black, 620; *Farmers' & Mechanics' National Bank* v. *Dearing,* 91 U. S. 29.

Congress has not only provided how, where, and to what extent shares in national banks may be taxed, but has likewise prescribed the means by which the State authorities shall obtain the requisite information, and imposed upon the bank officers the duty of furnishing it. The whole ground is therefore covered by congressional legislation, the validity of which is not open to question.

The State then interferes; and, in order to tax the shares at a place and in a way not authorized by Congress, imposes upon the bank a new and entirely different duty, under a penalty not provided by Congress, but to be recovered in the State courts, at the suit of the local authorities.

The effect of the Vermont statute is, therefore, not only to alter and extend, in material respects, the provisions of the act of Congress, but to impose a penalty upon the officers of the bank, for not discharging a duty which the act does not require.

The act of Congress of 1864 provides that the shares of stock in the national banks shall be assessed " at the place where such bank is located, and not elsewhere." The act of 1868 was not in force at the dates when Waite refused to furnish the lists.

The second section of the statute provides that the stock and shares of national banks shall be listed and taxed in the same manner as the stock of the banks which are chartered

under the authority of Vermont are liable to be taxed under the State law. That law (Stat. Vt. c. 83) makes all personal property, including stocks, taxable in the town where the owners reside, and not elsewhere.

It is for the purpose of carrying out this method of taxation that the statute requires the cashiers to transmit to the town-clerks of all towns where any stockholders may reside, lists of such stockholders, and of the number of their shares ; and, for a neglect or refusal so to do, prescribes the penalty which this suit was brought to recover.

The statute is, therefore, in direct and palpable conflict with the provisions of the act of Congress of 1864 in respect to the place where the shares shall be taxed. Both cannot stand: one or the other must give way.

The validity of a State law, providing for such a mode of taxation prior to the act of 1868, has been twice before this court, — in *Austin* v. *The Alderman*, 7 Wall. 694, and *Tappan* v. *Merchants' National Bank*, 19 id. 490.

It was left undecided, the decision becoming unnecessary. But the language of the court in the latter case clearly indicates their opinion that the State law could not be supported. The imperative and explicit terms of the act of Congress leave no room for the discussion of the question.

In the *City of Utica* v. *Churchill*, 33 N. Y. 161, the Court of Appeals held that the assessment of a shareholder out of the ward in the city where the national bank was located, made in accordance with the laws of New York, was void, because it conflicted with the forty-first section of the act of Congress.

The validity of the statute, in this particular, directly affects the plaintiff in error. It is for a refusal to aid in giving effect to a mode of taxation expressly prohibited by Congress that the penalty has been inflicted, by the rendition of the judgment of which he complains. He is, therefore, entitled to insist upon the invalidity of the statute in respect of the mode of taxation it provides, as well as in respect of the personal duty and penalty it imposes upon him.

*Mr. Charles N. Davenport, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Vermont, and, as is frequent in writs to the State courts, it is objected that there is no jurisdiction. The plaintiff in error was cashier of a national bank in that State; and the judgment which this writ brings here for review was rendered against him for penalties imposed by a statute of that State, for his refusal to transmit to the clerk of the town of Brattleboro' a true list of the shareholders of the bank who resided in that town, with the number of shares held, and the amount paid on said shares. The record shows that " the defendant's counsel claimed in defence, that, as said bank was organized under the law of Congress referred to in plaintiff's declaration, the defendant, as such cashier, was amenable to no law but said law of Congress, and that the State legislature had not power to prescribe or define his duties as such cashier." That this proposition raises what is called a Federal question, within the meaning of the act of 1867, admits of no doubt. We are also of opinion that no judgment could have been rendered against the defendant in the State courts, without holding, and in effect deciding, that this plea was bad; for, if the State could not impose the duty of making such a list on the cashier by reason of the act of Congress or the Constitution of the United States, then the defendant was guilty of no offence, and the judgment is for that reason erroneous. This plain proposition cannot be evaded by any opinion delivered by the Supreme Court of that State. This court, therefore, has jurisdiction.

And the single question raised by the record is whether the statute of the State is void which requires the cashier of each national bank within the State, and the cashiers of all other banks, to transmit to the clerks of the several towns in the State in which any stock or share holder of such banking association shall reside, a true list of the names of such stock or share holders, with the number of shares standing against the name of such share or stock holder on the books of such banking association, together with the amount of money actually paid in on such share on the first day of April.

The proposition on which this statute is asserted to be void is that Congress has legislated upon the same subject, and that,

where there exists a concurrent right of legislation in the States and in Congress, and the latter has exercised its power, there remains in the States no authority to legislate on the same matter. It is not necessary to dispute that proposition, nor, when stated in this general language, can it be controverted. It is none the less true, however, that the line which divides what is occupied exclusively by any legislation of Congress from what is left open to the action of the States is not always well defined, and is often distinguished by such nice shades of difference on each side as to require the closest scrutiny when the principle is invoked, as it is in this case.

We have more than once held in this court that the national banks organized under the acts of Congress are subject to State legislation, except where such legislation is in conflict with some act of Congress, or where it tends to impair or destroy the utility of such banks, as agents or instrumentalities of the United States, or interferes with the purposes of their creation.

This doctrine was clearly and distinctly announced in *National Bank* v. *Commonwealth*, 9 Wall. 353 ; and that case has been often referred to since, with approval, in this court.

The statute of Kentucky required "the cashier of a bank whose stock is taxed to pay into the treasury the amount of the tax due. If not, he was to be liable for the same, with twenty per cent upon the amount." The stock thus to be taxed was, as in the present case, the stock of the shareholders, as authorized by the act of Congress; and that statute went a step further than to require a list of the names of these shareholders and the amount of their stock, and obliged the cashier to collect the tax out of the dividends, and pay it over to the State.

The precise point raised here was taken there, and overruled by this court; namely, that the laws of the State could impose no such duty on the banks organized under the laws of the United States. The case is directly and conclusively in point.

It seems to have been supposed that, because Congress has required of each national bank that a list of its stockholders shall be kept posted up in some place in their business office,

this covers the same ground as that covered by the Vermont statute.

The act of Congress, however, was merely designed to furnish to the public dealing with the bank a knowledge of the names of its corporators, and to what extent they might be relied on as giving safety to dealing with the bank. It had no such purpose as the Vermont statute, and was wholly deficient in the information needed for the purposes of taxation by the State, as conceded to it by the act of Congress itself.

Some legislation of Vermont was, therefore, necessary to the proper exercise of the rightful powers of the State, and, so far as it required this list, was not in conflict with any provision of the act of Congress.

This leads to the second objection to the validity of the State statute; namely, that its purpose was to tax bank shares at other places than those where the bank was located.

This case does not raise that question.

1. Because the bank whose cashier is the plaintiff in error was located in the town of Brattleboro', and the judgment against him is for refusing to deliver the list of shareholders to the clerk of that town, and not for his refusal to deliver such a list to any other town. The delivery to this clerk of a list of the shareholders in that town would have been in aid of the taxation of the shares at the place where the bank was organized and did business, and such taxation is legal within the narrowest definition of the act of Congress.

2. But if it be true that so much of this statute as is supposed to authorize other towns in which shareholders reside to tax such shares is unconstitutional, that does not invalidate the part of it we have been considering. It will be time enough to decide the provision of the State law authorizing such taxation unconstitutional, when an attempt is made to collect such a tax, and the party resisting it shall bring the question here. His rights are not affected by the acts demanded of the cashier; and the latter has no right to make a case for him in advance. This court does not sit here to try moot cases to solve a question which may never be raised by any party entitled to raise it. *Judgment affirmed.*