# United States Court of Appeals for the Federal Circuit

---

**ROSEBUD LMS INC., DBA ROSEBUD PLM,**
*Plaintiff-Appellant*

**v.**

**ADOBE SYSTEMS INCORPORATED,**
*Defendant-Appellee*

---

2015-1428

---

Appeal from the United States District Court for the District of Delaware in No. 1:14-cv-00194-SLR-SRF, Judge Sue L. Robinson.

---

Decided: February 9, 2016

---

JUSTIN CHEN, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., Houston, TX, argued for plaintiff-appellant. Also represented by JANE LANGDELL ROBINSON; ANDREW W. SPANGLER, Spangler Law PC, Longview, TX.

MICHAEL BERTA, Arnold & Porter LLP, San Francisco, CA, argued for defendant-appellee. Also represented by MAULIK GIRISH SHAH.

---

Before MOORE, HUGHES, and STOLL, *Circuit Judges.*

MOORE, *Circuit Judge.*

Rosebud LMS Inc. appeals from the district court's grant of summary judgment that Adobe Systems Inc. was not liable for pre-issuance damages under 35 U.S.C. § 154(d) because it had no actual notice of the published patent application that led to asserted U.S. Patent No. 8,578,280. For the reasons discussed below, we *affirm*.

BACKGROUND

Rosebud has filed three suits against Adobe for patent infringement. Rosebud first sued Adobe for infringing U.S. Patent No. 7,454,760 in 2010, in a suit that was dismissed more than three years before this case was filed. *Rosebud LMS Inc. v. Adobe Sys. Inc.*, No. 1:10-cv-00404-GMS (D. Del., filed May 14, 2010, dismissed Nov. 29, 2010) ("*Rosebud I*"). Rosebud next sued Adobe for infringing U.S. Patent No. 8,046,699 in 2012, in a suit that was dismissed with prejudice a few weeks after this case was filed. *Rosebud LMS Inc. v. Adobe Sys. Inc.*, No. 1:12-cv-01141-SLR (D. Del., filed Sept. 17, 2012, dismissed Feb. 28, 2014) ("*Rosebud II*"). And on February 13, 2014, Rosebud brought suit against Adobe for the third time, alleging that it infringed the '280 patent. The '280 patent is a continuation of the '699 patent, which is a continuation of the '760 patent. The patents teach techniques for enabling collaborative work over a network of computers.

In the instant suit, Adobe moved for summary judgment of no remedies, claiming that Rosebud was not entitled to post-issuance damages because Adobe had discontinued use of the accused technology in January 2013, ten months before the issuance of the '280 patent. Adobe also asserted that Rosebud was not entitled to pre-issuance damages under § 154(d) because Adobe had no actual notice of the published patent application that led to the '280 patent. Rosebud did not oppose Adobe's mo-

tion for summary judgment with respect to post-issuance damages. Instead, Rosebud argued that there remained a genuine dispute of material fact as to whether Adobe had actual knowledge of the published '280 patent application. Specifically, Rosebud argued that Adobe had actual knowledge of the grandparent patent to the '280 patent application; that Adobe followed Rosebud and its product and sought to emulate some of its product's features; and that it would have been standard practice in the industry for Adobe's outside counsel in *Rosebud II* to search for the '280 patent application, which was published before *Rosebud II* was filed and related to the patent asserted in that suit. Rosebud also argued that any decision on the issue would be premature because it had not yet completed fact discovery.

One month before the close of fact discovery, the district court granted Adobe's motion for summary judgment. The court reasoned that Rosebud had not met § 154(d)'s requirement of actual notice because Rosebud's evidence did not identify the '280 patent application by number, and was, at best, evidence of constructive notice. It rejected the idea that the parties' litigation history created an affirmative duty for Adobe to search for Rosebud's published patent applications. Rosebud appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment under the law of the regional circuit; here, the Third Circuit. *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1308 (Fed. Cir. 2013). The Third Circuit reviews a grant of summary judgment de novo. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000) (en banc). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Third Circuit reviews a district court's denial of a request for time to conduct additional discovery under Federal Rule of Civil Procedure 56(d) for abuse of discretion. *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015).

### I.    Section 154(d)'s "Actual Notice" Requirement

Generally, patent owners may only collect damages for patent infringement that takes place during the term of the patent. *See* 35 U.S.C. § 271. Section 154(d) is a narrow exception to that rule:

> (1) In general.--In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent under section 122(b), . . . and ending on the date the patent is issued--

> (A)(i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application . . . ; and

> (B) had actual notice of the published patent application . . . .

35 U.S.C. § 154(d). Relevant to this appeal, § 154(d) provides for damages that take place before a patent issues if the infringer "had actual notice of the published patent application." *Id.* § 154(d)(1)(B).

The nature of § 154(d)'s "actual notice" requirement is an issue of first impression for this court. Adobe argues that actual notice under § 154(d) requires an affirmative act by the applicant. Without conceding knowledge, Adobe argues that knowledge of the patent would not have been enough—notice had to come directly from the

patentee for the "actual notice" requirement to be met. Because it is undisputed that Rosebud did not affirmatively give Adobe notice of the published '280 patent application, Adobe argues that we should affirm the district court's summary judgment.

We agree with Adobe and the district court that constructive knowledge would not satisfy the actual notice requirement. We do not, however, agree with Adobe that § 154(d)'s requirement of actual notice requires an affirmative act by the applicant giving notice of the published patent application to the infringer. Certainly, "actual notice" includes a party affirmatively acting to provide notice. *See, e.g.*, 58 Am. Jur. 2d *Notice* § 4 (2015) (defining actual notice as "notice expressly and actually given"); Black's Law Dictionary 1227 (10th ed. 2014) (defining actual notice as "[n]otice given directly to, or received personally by, a party"). But the ordinary meaning of "actual notice" also includes knowledge obtained without an affirmative act of notification. "Indeed, 'actual notice' is synonymous with knowledge." 58 Am. Jur. 2d *Notice* § 4 (2015) (also explaining that "[a]ctual notice rests upon personal information or knowledge while constructive notice is notice that the law imputes to a person not having personal information or knowledge").

Adobe argues that the legislative history of § 154(d) confirms that the patent applicant must affirmatively provide notice to the alleged infringer. The House Report discussing the proposed § 154(d) stated:

> The requirement of actual notice is critical. The mere fact that the published application is included in a commercial database where it might be found is insufficient. The published applicant must give actual notice of the published application to the accused infringer and explain what acts are regarded as giving rise to provisional rights.

H.R. Rep. No. 106-287, pt. 1, at 54 (1999). However, the legislative history states that the applicant must not only affirmatively give notice of the published application to the accused infringer, but must also "explain what acts are regarded as giving rise to provisional rights"—an additional requirement not even hinted at in the text of § 154(d). *Id.* The language enacted by Congress is not consistent with Adobe's interpretation.

Nor does our construction of 35 U.S.C. § 287(a) apply to § 154(d). Section 287(a), the marking provision, prohibits the collection of post-issuance damages if a patentee sells a product that falls within its own patent claims without (1) marking the patented articles with the patent number or (2) "proof that the infringer was notified of the infringement and continued to infringe thereafter." We have interpreted this latter provision to require "the affirmative communication of a specific charge of infringement." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (citing *Dunlap v. Schofield*, 152 U.S. 244 (1894)). But we will not read this requirement into § 154(d), where the statute itself does not recite the condition. If § 154(d) contained § 287(a)'s "proof that the infringer was notified" language, our interpretation of § 287(a) would be relevant, and likely dispositive. But that is not the case. Section 287(a) explicitly requires an act of notification, unlike § 154(d), which merely requires "actual notice." If anything, these differences suggest that we should interpret the two statutes differently. Section 287(a) shows that Congress knows how to use language requiring an affirmative act of notification when it wishes. It could have used that language in § 154(d) and did not.

Perhaps there are, as Adobe argues, policy reasons for requiring an affirmative act of notification by the patentee. Requiring the applicant to affirmatively provide notice to potential infringers is in line with the extraordi-

nary nature of statutory pre-issuance damages. Moreover, a strict rule requiring notification by the applicant is simpler to implement and does not leave the accused infringer in the difficult situation of having to rebut allegations that it knew of the published application. If Congress wishes, it can amend the statute to require an affirmative act by the patentee. We cannot. In the absence of such action, we interpret the actual notice requirement of § 154(d) as it is clearly written to have its ordinary meaning.

II.    Summary Judgment on § 154(d)'s "Actual Notice" Requirement

Having interpreted § 154(d)'s "actual notice" requirement to include actual knowledge of the published patent application, we next consider if there is a genuine dispute of material fact as to whether Adobe actually knew of the published '280 patent application. Adobe asserted in its verified interrogatory response that it first received notice of the published '280 patent application when Rosebud's counsel threatened this lawsuit on February 4, 2014— after it had discontinued use of the patented technology. Rosebud disputes Adobe's assertion and claims that it presented sufficient circumstantial evidence of Adobe's knowledge that a reasonable jury could find in its favor. We do not agree and conclude, as the district court did, that there is no genuine dispute of material fact on the record before us.

Rosebud's evidence falls into three main categories. First, there is evidence that Adobe knew of the grandparent patent to the '280 patent (namely, the '760 patent). Second, Rosebud argues that it presented evidence that Adobe followed Rosebud and its product and sought to emulate the product's features. Finally, Rosebud argues it is standard practice when defending against a charge of patent infringement to search for patents and applica-

tions related to the asserted patent, such that Adobe's outside counsel would have discovered the published '280 patent application during *Rosebud II*. We address each of these categories of evidence in turn.

First, the fact that Adobe knew of the related '760 patent does not show it had actual notice of the published '280 patent application. The '760 patent and the '280 patent share a specification. But the notice requirement is not limited to the specification. The alleged infringer must also have notice of the claims of the published patent application and the fact that the applicant is seeking a patent covering those claims. Indeed, § 154(d)(2) provides that pre-issuance damages are not available unless the invention claimed in the published patent application is "substantially identical" to the patented invention. Otherwise, the infringer cannot know the scope of the claimed invention. Knowledge of related patents does not serve this function, and is therefore legally insufficient to establish actual notice of the published patent application.

Second, Rosebud argues that it put forth evidence showing that Adobe followed Rosebud and its product and sought to emulate the product's features. But Rosebud's proffered evidence does nothing of the sort. Rosebud offers seven exhibits of emails from Adobe employees and a single reference to "Rosebud" in one line of Adobe's source code. But all the emails cited by Rosebud were sent more than two years before the publication of the '280 patent application. Five of the seven email chains originate from unsolicited emails Rosebud sent to Adobe employees about its product. And Rosebud's argument that Adobe's source code references "Rosebud" borders on the frivolous, as this reference is to a Microsoft product from before 2004, not the plaintiff in this lawsuit. Nothing in the evidence suggests that Adobe or its employees were monitoring Rosebud and its products, let alone to

such an extent that they would have actively sought out Rosebud's published patent applications more than two years after the emails were sent.

Finally, Rosebud argues that a reasonable jury could conclude that Adobe's outside counsel would have discovered the published '280 patent application while preparing for the *Rosebud II* litigation. We disagree. Rosebud argues that it is standard practice during litigation to review related patents, applications, and prosecution history to evaluate possible claim constructions. However, *Rosebud II* never reached the claim construction stage because Rosebud missed all of its court-ordered deadlines. Even when all of the evidence is taken into account and all reasonable inferences are made in Rosebud's favor, we agree with the district court that no reasonable jury could find that Adobe had actual knowledge of the published '280 patent application.

## III. Discovery

Rosebud alternatively argues that the district court abused its discretion when it granted summary judgment before completion of fact discovery relating to Adobe's knowledge of the published '280 patent application. It argues that it served a Federal Rule of Civil Procedure 30(b)(6) deposition notice on Adobe that included topics related to the published '280 patent application; that it served subpoenas on Adobe's outside counsel for the earlier Rosebud litigations regarding their knowledge of the published '280 patent application; and that it requested depositions of Adobe employees. It asserts that it diligently scheduled this discovery to be completed before fact discovery closed.

The district court did not abuse its discretion in granting summary judgment before the close of discovery. Rosebud had notice of Adobe's intent to file an early motion for summary judgment, and did not oppose this

request or indicate at the time that it needed further discovery on issues relevant to the motion. Moreover, Rosebud did not serve its Rule 30(b)(6) deposition notice or its subpoenas on Adobe's outside counsel until several weeks after it received Adobe's motion for summary judgment. It appears that Rosebud delayed filing much of its discovery until after it received Adobe's motion for summary judgment, without informing Adobe or the court that such discovery might be necessary. Given this timing, we see no abuse of discretion in the district court's action.

CONCLUSION

We *affirm* the district court's grant of summary judgment on Rosebud's claim for damages under 35 U.S.C. § 154(d).

**AFFIRMED**