# United States Court of Appeals for the Federal Circuit

———————————

**LUBBY HOLDINGS LLC, VAPOROUS TECHNOLOGIES, INC.,**
*Plaintiffs-Appellees*

**v.**

**HENRY CHUNG,**
*Defendant-Appellant*

———————————

2019-2286

———————————

Appeal from the United States District Court for the Central District of California in No. 2:18-cv-00715-RGK-JC, Judge R. Gary Klausner.

———————————

Decided: September 1, 2021

———————————

DANIEL C. CALLAWAY, Farella Braun & Martel LLP, San Francisco, CA, argued for plaintiffs-appellees. Also represented by NADIA ARID, ERIK C. OLSON.

WILLIAM B. CHADWICK, Kimball Anderson, Salt Lake City, UT, argued for defendant-appellant. Also represented by ROBERT AYCOCK; JOSEPH PIA, Pia Hoyt, Salt Lake City, UT; JEN-FENG LEE, LT Pacific Law Group LLP, City of Industry, CA.

———————————

Before NEWMAN, DYK, and WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge*.

Henry Chung appeals a judgment of the United States District Court for the Central District of California, finding that Mr. Chung was liable for infringing U.S. Patent No. 9,750,284 (the "'284 patent") and awarding damages of $863,936.10.  Although we conclude that there was evidence to support the jury's verdict that Mr. Chung directly infringed the '284 patent, the district court erred in awarding damages for the sales of infringing products prior to the commencement of this action, which is the date Mr. Chung received actual notice of the '284 patent under 35 U.S.C. § 287.  As a result, we affirm in part, reverse in part, and remand for a new trial to determine the number of infringing products sold after the commencement of this action and for the determination of a reasonable royalty rate for the sale of these units.

## BACKGROUND

Lubby Holdings, LLC is the owner of the '284 patent, titled "Personal Vaporizer."  "Personal vaporizers are handheld devices that vaporize a vaporizing medium such as a liquid solution or a wax."  '284 patent col. 1 ll. 17–18.  The '284 patent relates to personal vaporizers that "will resist leaking, particularly during periods of nonuse."  *Id.* col 1 l. 65.  Vaporous Technologies, Inc. is a nonexclusive licensee of the '284 patent.  On January 26, 2018, Lubby

Holdings and Vaporous Technologies (collectively, "Lubby") sued Mr. Chung for infringement.[1]

Beginning on May 7, 2019, the district court held a three-day jury trial. Each party presented evidence. During trial, Mr. Chung moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) as to damages, arguing that Lubby did not meet its burden to prove that it complied with 35 U.S.C. § 287's marking requirement. The court took the motion under submission but did not issue a ruling. The jury ultimately returned a verdict finding Mr. Chung liable for direct infringement of the '284 patent and awarding Lubby $863,936.10 in reasonable royalty damages. After trial, Mr. Chung renewed his motion for judgment as a matter of law under Rule 50(b). In a brief order, the district court denied Mr. Chung's renewed motion, finding that "there was sufficient evidence to support the jury's verdict at the close of trial." J.A. 3.

Mr. Chung also moved for a new trial under Rule 59(a). In his Rule 59(a) motion, Mr. Chung argued that the verdict of liability was against the clear weight of the evidence. The district court denied the motion with minimal explanation.

Mr. Chung appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

---

[1]     In its complaint, Lubby also sued DeepVapes Inc., which did not appear in this action. The judgment purports to award relief against DeepVapes as well as Mr. Chung. DeepVapes did not appeal. We do not consider the status of the judgment against DeepVapes. Additionally, Lubby sued Ming Chen, an individual, whom the district court dismissed at trial.

## DISCUSSION

### I

Mr. Chung first argues that there was no evidence in the trial record to support the jury's verdict that he directly infringed the '284 patent. Because Mr. Chung did not properly raise the issue of his direct infringement liability in his Rule 50(a) motion and raised it only in his Rule 59(a) motion, we evaluate this issue under the substantially constrained abuse-of-discretion standard of review applicable to Rule 59(a) motions. *See Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 956–57 (9th Cir. 1998). "[W]here the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence," we will reverse the jury's finding of infringement "only where there is an *absolute absence of evidence* to support the jury's verdict." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010).

There is evidence to support the jury's verdict finding that Mr. Chung was liable for direct infringement of the '284 patent under 35 U.S.C. § 271(a). Lubby presented evidence to establish that Mr. Chung made, offered to sell, and sold personal vaporizer devices accused of infringing the '284 patent. *See, e.g.*, J.A. 762:23–763:7 (Mr. Chung testifying that he designed the accused products); *id.* at 769:24–770:13 (Mr. Chung testifying that he sold the accused products through his company); *id.* at 851:13–15 (Mr. Chung testifying that he made the decision to sell the accused products through his company); *id.* at 851:16–17 (Mr. Chung again testifying that he designed the accused products).

Mr. Chung argues that he cannot be liable for infringement based on acts that he took on behalf of his company, Esquire Distribution Inc., unless Lubby established that it was appropriate to pierce the corporate veil, and he argues that Lubby presented no evidence to support piercing the corporate veil. But that is not the standard. Corporate

officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity. In *Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308 (Fed. Cir. 2010), we stated that "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Id.* at 1313. But, as we emphasized in *Global Traffic Technologies LLC v. Morgan*, 620 F. App'x 895 (Fed. Cir. 2015), "[w]e do not believe this statement represents a departure from the traditional rule that a person is personally liable for his own tortious actions, even if committed as a corporate officer." *Id.* at 908 n.6 (citing *United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1299 (Fed. Cir. 2014)). "Instead, we interpret *Wordtech* as reinforcing the rule that a corporate officer—or perhaps only a corporate owner—cannot be found derivatively liable for *the corporation's infringement* without piercing the corporate veil." *Id.* (internal citation omitted); *see also Astronet Techs., Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015) (explaining that, while piercing the corporate veil is appropriate for questions of derivative liability, "veil-piercing standards do not govern the separate issue of direct liability for one's own wrongful acts, as the governing law defines those wrongs"). The fact that Mr. Chung may have acted on behalf of his corporation does not excuse him from individual liability. Given the evidence that Mr. Chung sold the allegedly infringing products and the deferential standard of review, we must uphold the jury's verdict that Mr. Chung is personally liable for direct infringement of the '284 patent.

## II

Mr. Chung next argues that the record lacks substantial evidence to support the jury's damages verdict. He contends that the jury's "damages verdict cannot stand because there is no evidence that Lubby complied with the

marking and notice requirements under 35 U.S.C. § 287." Appellant's Br. 49.[2]  Mr. Chung properly preserved and raised this issue in his Rule 50 motions.  A denial of a motion for judgment as a matter of law is reviewed de novo. *Greisen v. Hanken*, 925 F.3d 1097, 1107 (9th Cir. 2019).

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017).  "If a patentee who makes, sells, offers for sale, or imports his patented articles has not 'given notice of his right' by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Id.* at 1366 (quoting *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)).

Lubby argues that Mr. Chung did not meet his initial burden of production to point to products that he believed

---

[2]    35 U.S.C. § 287(a) provides, in pertinent part:

Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.  Filing of an action for infringement shall constitute such notice.

were sold unmarked. "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Id.* "The burden of proving compliance with marking is and at all times remains on the patentee." *Id.* at 1367. However, "an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. We have emphasized that "this is a low bar." *Id.* As we have explained, "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent. The alleged infringer's burden is a burden of production, not one of persuasion or proof." *Id.* But "[o]nce the alleged infringer meets its burden of production, . . . the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

Mr. Chung met his burden of production under *Arctic Cat* "to articulate the products [he] believes are unmarked 'patented articles' subject to § 287," *id.* Lubby did not disclose its damages computation as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii) until May 6, 2019, the day prior to trial. That same day, Mr. Chung objected to Lubby's damages computation, including raising the issue of whether Lubby's products were properly marked as required by 35 U.S.C. § 287. In his objection, Mr. Chung specifically pointed to the J-Pen Starter Kit product as listed on Lubby's website, which did not include a patent number. Mr. Chung met his initial burden of production in his objection by pointing to Lubby's J-Pen Starter Kit product, clearing *Arctic Cat*'s "low bar" to put Lubby "on notice that [it] . . . sold specific unmarked products which [Mr. Chung] believes practice the patent." *Id.* After Mr. Chung's objection, Lubby "b[ore] the burden to prove the products identified do not practice the patented invention." *Id.* Lubby

presented no evidence that the identified product did not practice the patent or that it marked the products it actually sold and thus failed to establish that it marked the products as required by § 287. It can recover damages only for the period that it provided actual notice to Mr. Chung.

Lubby established only that Mr. Chung was actually notified of infringement of the patent as required by § 287 as of the filing of the lawsuit on January 26, 2018. *See* 35 U.S.C. § 287(a) ("Filing of an action for infringement shall constitute . . . notice.").

In response, Lubby argues that Mr. Chung had actual notice prior to the filing of the lawsuit because Mr. Chung admitted in his answer "that he had notice of the issuance of the '284 patent." Appellee's Br. 57. Mr. Chung's admission that he had notice that the '284 patent issued does not equate to actual notice under § 287. "For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

Lubby also argues that, because Mr. Chung was on notice of the '284 patent and of his own infringing activity before the filing of the lawsuit, it is entitled to damages from earlier sales. As we have long explained, "the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). "It is irrelevant [under § 287] . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under [§] 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Amsted*, 24 F.3d at 187.

Lubby does not point to any evidence that it notified Mr. Chung of "[an] activity that is believed to be an infringement" before the filing of the lawsuit. *SRI*, 127 F.3d at 1462. Lubby argues that its witnesses testified that, before the patent issued, (a) Mr. Chung "signed nondisclosure agreements of July and October 2015," Appellee's Br. 57; (b) "the agreements pertained to the underlying technology in Lubby's December 2014 patent application," *id.* at 57–58; and (c) at that time, J. Christian Rado, the owner of Lubby Holdings and CEO and president of Vaporous, "told [Mr.] Chung that he could not use the technology in the '284 patent," *id.* at 58. Lubby also argues that it presented other evidence that established that Mr. Chung sold infringing units after the patent issued. The cited testimony and evidence do not show that Lubby (through Mr. Rado or otherwise) provided Mr. Chung "[an] affirmative communication of a *specific* charge of infringement by a *specific* accused product or device." *Arctic Cat*, 950 F.3d at 864 (emphases added) (quoting *Amsted*, 24 F.3d at 187). Damages thus can only be awarded for infringing units sold after the filing of the lawsuit. The district court erred in not entering a judgment as a matter of law that Mr. Chung was not liable for damages prior to the filing of the lawsuit.

Without citing to any evidence presented at trial, Mr. Chung argues that, following the filing of the lawsuit, there is only evidence that he sold infringing products for seven days, which totaled to 408 units. While that may be true, the only evidence of infringing sales presented at trial were two sales summaries, which listed cumulative sales over two time periods: (1) March 1, 2016, through February 1, 2018; and (2) September 6, 2017, through February 1, 2018. Both of these summaries include sales for the period prior to the filing of the lawsuit and do not break out sales in a way that establishes the number of sales that occurred for the period following the filing of the lawsuit. We thus remand for a new trial to determine the number

of sales made by Mr. Chung following the filing of the complaint and the damages award appropriate for Mr. Chung's sale of these infringing units.[3]

## CONCLUSION

In sum, we affirm the district court's denial of Mr. Chung's Rule 59(a) motion concerning the jury's verdict that Mr. Chung directly infringed the '284 patent, reverse the district court's denial of Mr. Chung's Rule 50(b) motion for the units sold prior to the filing of the complaint, and remand for a new trial to determine the number of sales made by Mr. Chung following the filing of the complaint and the amount of a reasonable royalty associated for these units.[4]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

## COSTS

No costs.

---

[3]    Mr. Chung also argues that the damages award included sales made prior to the issuance of the '284 patent. We have no need to address this argument given our holding that damages are unavailable with respect to sales before the filing of the suit, and the filing of the suit occurred after patent issuance.

[4]    Given the reversal and the likelihood that the royalty computation in any new trial will be different, we do not address Mr. Chung's objection to the previous royalty computation.

# United States Court of Appeals
# for the Federal Circuit

---

**LUBBY HOLDINGS LLC, VAPOROUS TECHNOLOGIES, INC.,**
*Plaintiffs-Appellees*

**v.**

**HENRY CHUNG,**
*Defendant-Appellant*

---

2019-2286

---

Appeal from the United States District Court for the Central District of California in No. 2:18-cv-00715-RGK-JC, Judge R. Gary Klausner.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

The jury found that U.S. Patent No. 9,750,284 ("the '284 patent") is valid and is infringed by defendant Henry Chung; the jury assessed damages. I join the court's affirmance of the verdict of infringement. However, I respectfully dissent from the court's rejection of the jury's damages verdict.

The issue of damages was tried to the jury, on the evidence and arguments presented by the parties. The district court sustained the verdict, for it was supported by

substantial evidence.[1]  There is no sound basis for this court's appellate discard of the jury's verdict.

### DISCUSSION

The e-cigarette device of the '284 patent is the invention of Christian Rado, the owner of Lubby Holdings LLC and Vaporous Technologies, Inc. (collectively "Lubby").  In evidence at the trial were Henry Chung's business records of his relationship with Rado and between their companies, the parties' confidentiality agreements concerning this invention, and documentation of Chung's importations and sales of this e-cigarette device, showing Chung's costs and profits.  This information was validated by Chung in his testimony at the trial.

Nonetheless, my colleagues discard the jury's damages verdict, on the theory that Chung did not have notice of infringement until he was served with the complaint in the district court action.  On this ground, my colleagues hold that there can be no liability for infringement before the date of service.[2]  This theory ignores Chung's admitted knowledge, for these parties had been collaborators in connection with this invention.  Rado testified that when the collaboration ended he told Chung not to infringe, and Chung acknowledged this warning.

---

[1]  *Lubby Holdings, Inc. v. Chung,* No. 2:18-cv-00715-RGK-JC, 2019 WL 4284507 (C.D. Cal., June 17, 2019); *Lubby Holdings, Inc. v. Chung,* No. 2:18-cv-00715-RGK-JC, 2019 WL 8105375 (C.D. Cal., July 12, 2019).

[2]  At the trial, Chung's defense to infringement was that he did not personally infringe; only his company infringed.  The jury's finding of personal liability is not negated by my colleagues.

The jury was told of the collaboration between Rado and Chung, their two Supply Agreements, a Consulting Agreement, two Confidentiality Agreements, and the manufacturing arrangements involving Chung's contacts in China – all for the e-cigarette device of Rado's '284 patent. When the collaboration ended, Rado told Chung not to infringe, and Chung nonetheless did so. This testimony and evidence was before the jury, in examination and cross examination; the jury found liability and awarded damages measured as a royalty on Chung's sales.

By post-trial motion Chung argued that Lubby had not complied with the marking statute, 35 U.S.C. § 287; the district court stated that absence of marking was not established because no insufficiently marked product was identified in Chung's pre-trial Answer or Memorandum of Contentions of Fact and Law. The district court held that the damages verdict was supported by substantial evidence.

The panel majority holds that Chung did not have notice of infringement and cannot be liable for damages until he was served with the complaint. However, "as an appellate court, it is beyond our role to reweigh the evidence or consider what the record might have supported, or investigate potential arguments that were not meaningfully raised." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1062 (Fed. Cir. 2016). The essence of jury trial is that the parties choose how to present their case to the jury, and the jury's verdict is reviewed on the record of the trial. *See Sage Prod's, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[A]ppellate courts do not consider a party's new theories, lodged first on appeal. If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court.").

In evidence were Chung's business records, which Chung ratified at trial, showing the high profit margin for

this product.   Chung's records showed sales of at least
36,453 units of this device.   Trial Ex. 201 (Appx1053).
These sales were the basis for the calculation of damages
of $863,936.10.  At the trial Chung argued for a lower roy-
alty rate, and Rado emphasized the high profits for this de-
vice. *See Avetek Danmark A/S v. CMI USA Inc.*, 852 F.3d
1352, 1362 (Fed. Cir. 2017) ("We have explained that a pa-
tent owner would be 'unlikely' to be 'interested in' accepting
a royalty rate lower than its profit margin on the patented
products.").

It is the jury's role to weigh the evidence and argument
and apply the law as instructed on the law.  The court, in
post-trial review of the jury verdict, must "view the evi-
dence in the light most favorable to the party in whose fa-
vor the jury returned a verdict and draw all reasonable
inferences in its favor." *First Nat'l Mortg. Co. v. Fed. Realty
Inv. Tr.*, 631 F.3d 1058, 1067 (9th Cir. 2011).  It is not the
appellate role to act as factfinder on appeal.  "We affirm
unless there is a clear showing of an absolute absence of
evidence to support the jury's verdict." *Duff v. Werner En-
ters., Inc.*, 489 F.3d 727, 730 (5th Cir. 2007).

A jury's verdict must be accepted unless "the record
contains no evidence in support of the verdict." *Molski v.
M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting
*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d
1342 (9th Cir. 1985)).  The panel majority now discards the
trial procedure, and devises a new theory whereby the
court excuses all infringing activity occurring before the fil-
ing of the district court complaint.  No jury instruction was
given on my colleagues' theory of absence of notice of in-
fringement. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659
F.3d 1142, 1154 n.5 (Fed. Cir. 2011) ("[E]videntiary objec-
tions not raised before the trial court are deemed
waived…").

Assertion that Chung had no knowledge of infringe-
ment was not presented at the trial.  A motion to alter a

jury verdict can be granted only when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "To the extent that there were conflicts in the evidence, neither the trial court upon motion for judgment n.o.v. nor the appellate court may substitute its choice of result for that of the jury." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1580 (Fed. Cir. 1992) ("Applying the standard of appellate review of a jury award of damages, the jury's finding must be upheld unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or based only on speculation or guesswork.") (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986).

From my colleagues' contrary rulings, I respectfully dissent.